(C. D. 364)

NATIONAL CARLOADING CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided July 8, 1940)

*Eugene R. Pickrell* for the plaintiff.

*Webster J. Oliver,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges.

DALLINGER, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation described in the invoice as "1 MAAG Pitch Measuring Instrument,

Type TME No. 1976." Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as a manufacture of metal not specially provided for. It is claimed that said merchandise is properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of said act as a machine not specially provided for, or, alternatively, at the rate of 40 per centum ad valorem under paragraph 360 of said act as a scientific or laboratory instrument.

The plaintiff offered in evidence the testimony of a single witness, Nicholas Cetrule, vice president of the Triplex Machine Tool Corporation, the ultimate consignee and the real importer herein, the National Carloading Corp., the nominal plaintiff, being the customs broker. No evidence was offered by the Government.

The said witness, a qualified mechanical engineer, testified that he had seen similar instruments assembled at the plant of the MAAG Gear-Wheel Co., the manufacturer at Zurich, Switzerland; and that he had seen similar instruments used and had used them himself.

At this juncture there was offered in evidence a sample of the imported mechanism, which was marked Exhibit 1, but which, on account of its value, was subsequently withdrawn and a printed circular containing pictorial representations and information concerning the imported article was substituted and marked in evidence as Illustrative Exhibit 4.

The witness then testified that the mechanism in question was a pitch-measuring machine for measuring or comparing the distance between the teeth on gears during the process of manufacture, a sample of one of the gears being admitted in evidence as Illustrative Exhibit 2. Asked to describe the operation of the mechanism shown in Exhibit 1, the witness testified as follows:

Exhibit 1 is set to the pitch of the gear to be tested; the two fixed teeth are set. Then it is used as a basis of comparison to the gear that is being worked.

\* \* \* \* \* \* \*

\* \* \* Then after it is set, the gear being worked is placed in some fashion over one of the teeth and the next adjacent tooth is rolled into the instrument, giving a reading on the dial gauge there. That reading is recorded or placed on a chart. Then it is moved to the next and the process is repeated; the reading is also taken. This operation is repeated from tooth to tooth and a reading obtained for each tooth in the gear. That reading gives you an idea of how close the gear being worked is to the master or standard. It compares the size or pitch of the tooth as against a master or set standard.

The witness then testified that he had sold similar instruments to such plants as Electromotive Corp. of LaGrange, Ill., manufacturers of Diesel engines; the Nuttall Gear Division of the Westinghouse Electric and Manufacturing Corp. of East Pittsburgh, specializing in the manufacture of gears; and the Warner & Swasey Co. of Cleveland, manufacturers of machine tools; and that he had prepared a diagram

showing the internal construction of Illustrative Exhibit 1, which was admitted in evidence as Illustrative Exhibit 3.

The witness then testified as follows:

By Mr. PICKRELL.

Q. Please tell the court the internal construction and operation of Illustrative Exhibit 1, using, if necessary, Illustrative Exhibit 3.—A. Essentially, the instrument consists of nothing more or less than a system of levers and gears, which multiply as they go along. For example, the two fingers marked "A–1" and "A–2"——

* * * The two fingers here [indicating].

Q. How are they marked on the diagram, Illustrative Exhibit 3?—A. Marked "A–1" and "A–2". They are placed on one of the teeth of the gear to be inspected, in this fashion [indicating], and stay in contact with that tooth. The finger "A"——that is this little thing [indicating].

Q. Marked "A" on the diagram?—A. Yes; it is movable, and that is placed against the next adjacent tooth of the gear, marked "Y". Thus now, Figure "A" being movable transmits its motion through a multiplication of knife edges to a dial indicator, marked "F", this indicator here. As the machine is rolled over the tooth a motion is given to the movable lever "A", marked on the exhibit, which, in turn, through a fulcrum point at "B", imparts a motion to lever "L" at point "C". Lever "L", in turn, makes a contact with the spindle of the dial indicator, marked "H", at point "E". When lever "L" is moved, it, in turn, moves the spindle "H", which has a rack on it, and this rack in turn moves a train of gears, "K", in the indicator. Because of this the pointer on the indicator registers a reading. Now then, that operation is repeated from tooth to tooth on the whole gear, and these readings will determine whether the gear compares with the standard which the customer sets up.

By Judge DALLINGER.

Q. I understand then the customer sets up the standard?—A. Yes; he does.

Q. And different concerns may have different standards?—A. Yes; some aviation work, for example, requires a closer tolerance.

By Mr. PICKRELL.

Q. What happens to this motion made by "A" on your Illustrative Exhibit 3 when you use Illustrative Exhibit 1?—A. The lever, a movable lever, transmits the motion through the two levers and gears to the point.

Q. Is Illustrative Exhibit 1 made entirely of metal?—A. Yes.

Q. Do you know of what metal it is made?—A. Aside from the outside case, which is aluminum, it is all steel.

Judge DALLINGER. Q. Do you know whether or not it is silver or gold plated?—A. No silver or gold.

On cross-examination the witness testified as follows:

X Q. What is the dial calibrated in?—A. It is calibrated in ten thousandths of an inch.

X Q. What the machine actually does is measure the distance between the teeth, is it not?—A. No; it only compares the gear being worked with the accepted standard, as set up by the customer.

X Q. But when you first set it, you set it for so many ten-thousandths of an inch?—A. No; only set it for the form of the tooth.

X Q. What does the ten-thousandths of an inch on the calibrated dial indicate?—A. It only gives you a basis of comparison as to how far off or how close the gear being worked is to the accepted standard.

X Q. Oh, that basis of comparison is the distance between the teeth of the gear, is it not?—A. You might say it is the distance between one point on one gear, tooth of one gear, to a corresponding point on an adjacent tooth of a gear.

X Q. Is that not distance between the teeth of the gear?—A. Well, you might call it distance, yes.

On redirect examination, the witness testified that the purpose of the instrument was to compare the gear to be tested with the standard. In answer to a question by the court he stated that the instruments under consideration were used in the gear departments of various plants of the companies to which they were sold.

Upon this record there is no question but that the mechanism at bar is a machine within the meaning of said paragraph 372, as that term has been judicially defined by the appellate court in *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537, and numerous other decisions both of this and of the appellate court.

However, counsel for the Government in his brief filed herein, while conceding that the device in question may be a machine, as claimed by the plaintiff, nevertheless insists that it is also a mathematical instrument within the meaning of paragraph 360 of the Tariff Act of 1930, and cites certain authorities in support of such contention. We are familiar with the cases cited and in our opinion none of them has any application to the instant merchandise. As a matter of fact, although there was a similar provision in paragraph 360 of the Tariff Act of 1922 for mathematical instruments, the precise question here presented was passed upon by this division of this court in the case of *Niles Bement Pond Co.* v. *United States*, Abstract 4728, 52 Treas. Dec. 762. In that case certain teeth-measuring devices were assessed with duty at the rate of 40 per centum ad valorem under paragraph 399 of the Tariff Act of 1922 as manufactures of metal not specially provided for, and were claimed to be properly dutiable at the rate of 30 per centum ad valorem under paragraph 372 of said act as machines not specially provided for. In sustaining the claim of the plaintiff therein, this court, speaking through Fischer, Chief Justice, said:

The uncontradicted testimony discloses that the measuring devices are designed to register or record inaccuracies of gears while in operation on gear cutting machines. The mechanisms which may be placed on a stand or held in the hand are operated by levers. The leverage power thus applied causes the so-called fingers to run across the teeth of the gears and thus to locate irregularities, if any therein. These inaccuracies are recorded on a calibrated dial which is incorporated in the instrument.

We regard that decision as here controlling. Hence we hold that the mechanism in question herein is properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as a machine not specially provided for, as alleged by the plaintiff. That claim is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.