(C. D. 661)

J. E. Bernard & Co., Inc. *v.* United States

United States Customs Court, Second Division

(Decided July 8, 1942)

*Barnes, Richardson & Colburn; Wallace & Schwartz* (*Joseph Schwartz* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Richard H. Welsh,* special attorney), for the defendant.

Before Tilson, Kincheloe, and Dallinger, Judges

Dallinger, Judge: This is a suit against the United States, arising at the port of Chicago, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation invoiced as "4 vertical field balances." Duty was levied thereon at

the rate of 40 per centum ad valorem under paragraph 360 of the Tariff Act of 1930 as scientific instruments. It is claimed that said articles are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of said act as machines not specially provided for.

At the hearing, held at Chicago on November 12, 1941, before Keefe, Judge, the plaintiff offered in evidence the testimony of a single witness, Herbert P. Niemann, an employee of the Askania Regulator Co. of Chicago, the ultimate consignee and the real importer of the merchandise involved herein. He testified that his company dealt in geophysical instruments used in exploration work to locate subsurface structures where oil may have accumulated; and that the instruments at bar were sent from Chicago to Houston, Tex.

A circular containing an illustration (figure 5) showing a sectional drawing of one of the so-called vertical field balances in question was admitted in evidence as plaintiff's illustrative exhibit 1.

The witness then proceeded to describe the operation of one of the instruments at bar as follows:

The vertical field balance is also called magnetometer, because it is based in its measuring on the magnetic principle. It consists of two magnetic bars, horizontally suspended on a very sensitive bearing, and equipped with a small mirror, and a carrying body for the two magnets. The two poles of the magnet are suspended by adjustments so they are absolutely horizontal. Then the magnetometer is released at a certain station in the field which is to be explored for that purpose, and any tipping or any tilting of the magnet system as it is being affected by magnetic energies present at the surface of that particular station, will cause a deflection of the magnet system, and the magnitude of that is read on a scale on the instrument. Then the magnetometer is moved to the next and the next station, and all differences in magnetic energies at these various points are taken down, and afterwards plotted on a chart to give certain contour lines, which experienced geophysicists use for determining, or trying to determine what substructure surfaces may be under those locations, rocks, domes, or any other formations that may be favorable to the accumulation of oil, or it has been used in mining work, where iron ores, which are directly magnetic, are used as energy to be read and valued with this particular magnetometer. In one sentence, it is measuring the magnetic energies at any particular point of the surface of the ground. That is what it is actually doing. The information thus obtained is later interpreted in other means, but that is the purpose of the field balance itself.

By Mr. SCHWARTZ:

Q. Do you know of any other use than as just stated by you?—A. No other use except for geophysical work. None of these instruments, outside of the school, of the Bureau of Standards for calibration purposes, have been sold for any other purpose by our company.

Q. Does the vertical field balance illustrated in Plaintiff's Illustrative Exhibit 1 utilize any energy or force?—A. Yes.

Q. What?—A. The magnetic energy on the earth's surface at the particular spot where the magnetometer is set up * * *.

Q. And does anything happen to the balance, or any part of it when the energy is so utilized or applied?—A. Yes. Correctly it should be called rotating. Even if it is only a small degree of one degree of angle, still it is a rotation.

Q. Can you mark with the letter "A" on this Plaintiff's Illustrative Exhibit 1 the part of the field balance which moves or rotates?—A. Yes. [Witness marks exhibit with letter "A."]

Upon the entire record we find: (1) that the so-called vertical field balances or magnetometers are exclusively used in the field of commercial operations; and (2) that, consisting of two magnetic bars horizontally suspended on a very sensitive bearing, they are mechanical contrivances which utilize, apply, or modify the energy or force of terrestrial magnetism for the transmission of motion.

Upon these facts we hold as a matter of law that the articles in question are neither scientific nor laboratory instruments within the meaning of paragraph 360 of the Tariff Act of 1930, as classified by the collector (*W. L. Conover* v. *United States*, 17 C. C. P. A. 324, T. D. 43743), but are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of said act as machines not specially provided for, as alleged by the plaintiff. *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537. That claim is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.