(C. D. 990)

ENGIS EQUIPMENT CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 15, 1946)

*Wallace & Schwartz; Barnes, Richardson & Colburn (Joseph Schwartz* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Richard H. Welsh,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

LAWRENCE, Judge: ` The collector of customs classified certain so-called clinometers under the provision in paragraph 397 of the Tariff Act of 1930 for articles or wares not specially provided for, composed wholly or in chief value of metal, and assessed duty thereon accordingly at the rate of 45 per centum ad valorem. Various claims for lower rates of duty are alleged by the plaintiff in its protests and by amendments thereto; and while none of them has been abandoned, reliance is placed upon the claim that the articles are dutiable at the rate of 27½ per centum ad valorem under the provision in paragraph 372 of said act for machines, not specially provided for; or, alternatively, at the rate of 40 per centum ad valorem under the provision for mathematical instruments in paragraph·360 of said act which, so far as here applicable, reads:

Scientific and laboratory instruments, apparatus, utensils, appliances (including surveying and mathematical instruments), and parts thereof, wholly or in chief value of metal   *   *   *   finished or unfinished, not specially provided for, 40 per centum ad valorem;   *   *   *

At the trial, counsel for the plaintiff drew attention to a memorandum on customs Form 4371, attached to the invoice in protest 108263–K, and stated—

At this time I would like to offer in evidence the memorandum to which I have referred in Protest 108263–K, on Customs Form 4371, from the appraiser to the collector, dated January 17, 1944, in red ink.

There being no objection on the part of the Government, the paper was admitted in evidence. The memorandum referred to reads as follows:

Coll: Please note. In the light of B/L 426.85 of 1/6/44 this merchandise would now be classified as mathematical instruments 40/360

WB 1/17/44
W. V. Bunting

A print illustrating the mechanism was received in evidence as exhibit 1, and a sample of one of the imported clinometers, No. Mark VII, was received in evidence as exhibit 2.

J. P. Steindler, president of the plaintiff corporation, testified that he supervises its sales activities in cooperation with his associates and has been importing and selling clinometers since 1938; that he is a graduate engineer from the Armour Institute and is familiar with the operation of clinometers, having first seen them demonstrated in England at various places, and also having shown them to certain customers in the United States; that the clinometers in question are referred to in the invoices as "Mark V," "Mark VA," "Mark VII," and "Mark VIII," and differ only in the base plate; that the "interior mechanism of all of them is exactly the same," and that they are identical in size and in operation.

With respect to the use of the device the witness testified that—

Clinometers are used for measuring, for determining the inclination of any inclined plane or angle, or such.

\*        \*        \*        \*        \*        \*        \*

For instance, let us take the case of a machine tool. If the bed of a machine tool is not level, the product resulting from this machine tool could be wrong. The machine would not operate accurately. On the other hand, take the case of a boring operation. If you want to bore a hole, let us say, at a certain angle, and the table on which you place your work is not accurate, you would get a scrap piece out of it.

Referring to the print (exhibit 1) of the clinometer, the witness testified as follows:

The instrument is placed on the surface that is going to be measured, that is going to be checked for its inclination. It is in a locked position. First we unlock it by turning this knob (indicating), which pushes a spring. This spring moves forward to the rotor. That causes that rotor to swing. We brake the swing gently by returning the knob and releasing it again. When it comes to rest position, we lock it definitely. Then we can take it off and read it in any position. According to this drawing, the function of the instrument is as follows: The knob, No. 1, is in such a position that the rotor, No. 11, and the stator, No. 9,

are locked. By turning the knob to one side, the plate, No. 2, presses on the member No. 3, compresses the spring, No. 4, and moves the shaft, No. 14, compressing the spring, No. 13, into such a position that the rotor is free to swing. The braking action and checking at the braking action is done exactly the same way, in the reverse order. The rotor, No. 11, runs on ball bearings, which are designated as No. 21 and No. 22, and on two sleeves, No. 19 and No. 20, and comes to rest due to the fact that it has an eccentric weight which applies the necessary force, No. 16. The plate on which the instrument rests in the drawing is here designated as No. 17, and held in place by screws, No. 18.

The witness further stated that "In order to bring the rotor to a stop or to a standstill, the force of gravity is used."

It also appears from the testimony of this witness that certain parts of these clinometers are made with precision in order that the device might operate properly; that "The clinometer measures degrees and minutes of angles, and it is shown on the clinometer by a hairline over a certain number on the rotor that gives the desired degrees, and on the vernier scale for the minutes"; that it would be possible to measure angles without the clinometer; that there are various devices that measure angles; and that it could be done by mathematical calculation or computation, which, however, is obviated when a clinometer is employed to give a correct reading.

The second and last witness who testified on behalf of the plaintiff was Adam J. Schneider, vice president and secretary of the importing corporation. As such, he had concerned himself with the engineering and sales phases of the business, and had familiarized himself with the operation of clinometers, having made various demonstrations thereof in the presence of Government officials and customers to illustrate the characteristics and functions of the devices. His testimony is in substance the same as that of the previous witness.

Without waiving any of its claims made in the protests or in amendments thereto, the plaintiff relies primarily upon its contention that these clinometers are dutiable at the rate of 27½ per centum ad valorem under the provision in paragraph 372, *supra*, for "all other machines, finished or unfinished, not specially provided for," citing *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537; *United States* v. *J. E. Bernard & Co., Inc.*, 30 C. C. P. A. (Customs) 213, C. A. D. 235; and *J. E. Bernard & Co., Inc.* v. *United States*, 9 Cust. Ct. 57, C. D. 661.

While we are of the opinion, based upon the facts of record herein, that these clinometers are mechanical contrivances which utilize, apply, or modify energy or force, and are therefore machines as that term has been judicially defined in the *Simon* case, *supra*, and in numerous other cases of like import, nevertheless, we are equally convinced that if these devices are also mathematical instruments, they are more specifically provided for as such under the provision therefor in said paragraph 360, as alternatively claimed by the plaintiff.

The Government in substance admits that the collector erred in classifying the articles under paragraph 397, urging that they are correctly classifiable under said paragraph 360 as mathematical instruments. For instance, in its main brief herein, the Government states "The Issue" in the following terms:

Whether or not the involved articles are properly classifiable as mathematical instruments under paragraph 360, *supra*, or as machines, not specially provided for, under paragraph 372, *supra?*

Moreover, as stated earlier in this opinion, the appraiser, in January 1944, informed the collector of customs, on customs Form 4371, that these clinometers "would now be classified as mathematical instruments 40/360."

The latter view appears to be amply supported by the testimonial record and by the exhibits herein, as well as by the governing principles laid down in *United States* v. *F. Weber Co., Inc.*, 25 C. C. P. A. (Customs) 433, T. D. 49506. There, so-called pantographs, capable of producing, with minute mathematical precision, the outlines, or copies, of a plane figure "in any predetermined ratio," were classified under said paragraph 360 as mathematical instruments. That term, the court pointed out, is defined by the Century Dictionary as "instruments for mathematical drawing and drafting, such as dividers, protractors, and the like." It also quoted from Funk & Wagnalls New Standard Dictionary the following definitions of the word "mathematical":

\* \* \* 1. Pertaining to or of the nature of mathematics; treating of quantities, as space, weight, and distance; as, *mathematical* science. 2. Based on or conformed to the principles of mathematics; demonstrably correct; rigidly exact, precise; as, *mathematical* conclusions. 3. Used in or connected with the science of mathematics; as, *mathematical* instruments. [Italics quoted.]

Concerning the pantographs there under consideration the court said:

The instruments here at issue are shown to be capable of minute mathematical precision in producing the various outlines, or copies, which it is their function to produce, and, upon the whole, we are of the opinion that they are clearly comprehended within the term "mathematical instruments," as that term is used in paragraph 360, *supra*.

In the instant case it is undisputed that the imported clinometers operate mechanically to record with mathematical precision the angle of inclination of plane surfaces, a result which would otherwise require a careful mathematical calculation, or recourse to certain devices, other than clinometers, equipped to measure angles.

While this case is factually different from the *Weber* case, *supra*, nevertheless, the principles there enunciated are here applicable, and compel the conclusion that these clinometers are properly classifiable under paragraph 360, *supra*, as mathematical instruments.

Upon this phase of the case plaintiff makes in its reply brief herein this contention:

It is our position that Par. 360 provides only for those mathematical instruments *which are not machines;* and that it was the Congressional intent that mathematical instruments which are machines should be dutiable under Par. 372 rather than Par. 360. [Italics quoted.]

Plaintiff alleges that evidence of such congressional intention may be found in paragraph 372 itself, in the provision for "combined adding and typewriting machines," asserting that "It can hardly be denied" that such a machine is a mathematical instrument, and urging that—

* * * If Congress had intended that mathematical instruments which are machines, should be dutiable under Par. 360, surely they would have provided for combined adding and typewriting machines in Par. 360, rather than Par. 372.

We are not prepared to concede, as alleged by plaintiff, that "It can hardly be denied that a combined adding and typewriting machine is a mathematical instrument." Any such holding would seem completely to ignore the typewriting feature in the machine. With the same propriety, why not call the combined mechanism a typewriting machine, entirely disregarding the adding equipment therein? In other words, the article would seem to be precisely what Congress called it—a *combined* adding and typewriting machine. Strictly speaking, it is neither a typewriting machine nor an adding machine, but a combination of the two. Hence, the provision therefor in said paragraph 372, we are satisfied, need not enter into a consideration of the scope of the term mathematical instruments in paragraph 360, *supra.* Its presence in paragraph 372 is certainly not indicative of a legislative purpose to exclude from paragraph 360 all mathematical instruments which may also be machines, as alleged by plaintiff. To be consistent, that contention should apply with equal force to the other articles named in said paragraph 360; namely, "Scientific and laboratory instruments" which are made to include "surveying and mathematical instruments." If any such instruments are machines, are they *ipso facto* excluded from the paragraph? We think not.

In *United States* v. *C. H. Stoelting Co.*, 21 C. C. P. A. (Customs) 588, T. D. 46995, the court passed upon the relative specificity of paragraphs 360 and 368 of the Tariff Act of 1930. In holding that the chronoscopes there before it were scientific instruments and as such classifiable under said paragraph 360, the court made this very significant observation:

It is well known that many very delicate scientific instruments are provided with clockwork mechanisms of various kinds. This is particularly true of astronomical instruments of very great delicacy and of great value, designed for the purpose of measuring the distance of the stars and planets from the earth. We do not think that Congress intended that all such instruments, used only in pure science, should be classified under said paragraph 368, but did intend that they

should be classified under paragraph 360, unless more specifically provided for elsewhere.

Surely, if an instrument so delicately constructed that it can measure "the distance of the stars and planets from the earth" is a scientific instrument as contemplated by said paragraph 360, the present clinometers, which measure angles and inclinations of plane surfaces, may well be mathematical instruments under the same paragraph. There is nothing in the language employed which even remotely suggests a legislative purpose to exclude from the paragraph any article which may belong to one of the classifications therein mentioned merely because the article may be a machine.

Probably the case most frequently cited as to what constitutes a scientific instrument under paragraph 360, *supra*, is *W. L. Conover* v. *United States*, 17 C. C. P. A. (Customs) 324, T. D. 43743. The merchandise involved consisted of seismographs which were classified as scientific instruments and claimed to be machines. As pointed out by the court, the proof established that the articles were used in the field to record earth and rock vibrations or tremors caused by the explosion of dynamite a distance of from 2½ to 5 miles from them; that the record thus obtained showed whether the geologic structure was normal or abnormal, from which experts were able to deduce the presence or absence of oil. Obviously, it would be fair to assume that such an instrument could well possess the attributes and characteristics of a machine. In affirming the decision of this court (T. D. 43353) holding the articles to be classifiable as scientific instruments, the appellate court said:

* * * Surely, if the involved articles are not to be classified as scientific instruments, it must be shown, at least, that they are not devoted exclusively to matters pertaining to pure science, but are successfully, not experimentally, and substantially used in ordinary commercial pursuits. Were these facts affirmatively shown by the record, we might reach a different conclusion. However, on the record before us we must hold that appellant has failed to make a case and that the judgment of the court below is correct.

Another case which negatives the contention of the plaintiff is *Brabender Corp. et al.* v. *United States*, 8 Cust. Ct. 267, C. D. 619. There, so-called extensographs, farinographs, and plastographs were held to be laboratory instruments under said paragraph 360. Nor do we need to conjecture in describing the named articles as machines, since each of them contained as part of its internal mechanism two or more electric motors. Nevertheless, they were held to be laboratory instruments within the meaning of the paragraph.

Again, in *H. H. Elder & Co.* v. *United States*, 69 Treas. Dec. 685, T. D. 48261, we held a micro-galvanometer to be a part of a scientific instrument. Describing the article we said:

* * * the micro-galvanometer in question is an instrument for measuring the intensity of the electric current; and that the entire apparatus of which said

micro-galvanometer is an essential part is known as a Benioff seismometer, which is an instrument for detecting earthquakes from a very long distance. * * * Part of the apparatus consists of an electric coil surrounding a magnet so arranged that when the surface of the earth moves in a vertical direction an electric current is generated, which passes by means of a wire to the micro-galvanometer * * * Part of the micro-galvanometer consists of a small suspended mirror so arranged that it throws a beam of light on a photographic plate mounted on a revolving disk or drum controlled by a clock. When a current is generated by the movement of the earth's surface and passes to the micro-galvanometer it causes the mirror to move and thus the record of the movement of the earth is recorded on the photographic plate.

These are a few of the many cases that may be cited to show how untenable is the plaintiff's contention that mathematical instruments which are machines must be excluded from the scope of paragraph 360, *supra*.

It is true that, in such cases and others of similar import which may be cited, the court did not enter into any extensive discussion with a view to determining whether the articles which it classified under paragraph 360, *supra*, were also machines within the meaning of paragraph 372, *supra*. However, any serious doubt in the premises would seem to be removed in considering the natural implications inherent in the descriptive language depicting the internal mechanisms and functions of the articles involved. Apparently, having reached the conclusion that the articles were properly classifiable under paragraph 360 rather than under paragraph 372, it was deemed immaterial to determine whether the articles were also machines. Conversely, if it were found that the article was not exclusively used in pure, as distinguished from applied, science, and therefore not within the purview of said paragraph 360, but that it nevertheless possessed all the attributes of machines in the tariff sense, that fact was made clear. Take, for example, the thermoflux machines under consideration in *United States* v. *Adlanco Industrial Products Corp.*, 21 C. C. P. A. (Customs) 249, T. D. 46778, which were found to be used by the medical profession and by physiotherapists in hospitals and clinics for orthopedic treatment. Having concluded that such use was neither in pure science nor for laboratory purposes, the court discussed the claim alleged under paragraph 372, *supra*, and said:

Clearly the articles are "mechanical contrivances for utilizing, applying, or modifying energy or force", and are machines. *Simon, Buhler & Baumann, Inc.* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537; *United States* v. *Janson Co.*, 16 Ct. Cust. Appls. 315, T. D. 43075; *United States* v. *August Merckens*, 17 C. C. P. A. (Customs) 318, T. D. 43742. Surely electricity is a form of energy, and the articles here in question convert the house current into a current of a different voltage and frequency in order that they may serve the purpose for which they are used.

Nor do we believe that our conclusion is militated against by the presence under paragraph numbered "372" in the schedule accompanying the trade agreement between the United States and Sweden,

effective August 5, 1935, 68 Treas. Dec. 19, T. D. 47785, of the provision for—

Calculating machines specially constructed for multiplying and dividing, not specially provided for, and parts thereof, not specially provided for, wholly or in chief value of metal or porcelain.

The stated rate applicable to such machines is 25 per centum ad valorem, which is a reduction from 27½ per centum ad valorem imposed by the statutory provision in paragraph 372, *supra*, on "all other machines, finished or unfinished, not specially provided for." The provision in the Swedish Trade Agreement, therefore, merely indicates that in the opinion of the trade negotiators the general statutory classification for machines, not specially provided for, included the calculating machines above mentioned. But whether or not such machines are in fact and in law mathematical instruments is not before us for determination. At any rate, the language quoted from the Swedish Trade Agreement is certainly not indicative of an intent on the part of Congress to classify under paragraph 372 all mathematical instruments which happen to be machines.

Upon the established facts and the law applicable thereto we hold (1) that the imported clinometers are not dutiable at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as articles or wares not specially provided for, composed wholly or in chief value of metal, as classified by the collector; (2) that they are not dutiable at the rate of 27½ per centum ad valorem under the provision in paragraph 372 of said act for "all other machines * * * not specially provided for," as alleged by the plaintiff; but (3) that they are dutiable at the rate of 40 per centum ad valorem under the provision in paragraph 360 of said act for "mathematical instruments," as alternatively claimed by the plaintiff. The latter claim is therefore sustained and the decision of the collector of customs in each instance is reversed.

Judgment will be entered accordingly.