(C. D. 1271)

The J. D. Richardson Company *v.* United States

United States Customs Court, Second Division

(Decided September 8, 1950)

*Eugene R. Pickrell* (*Eugene R. Pickrell* and *Michael Stramiello, Jr.*, of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Samuel D. Spector* and *Arthur R. Martoccia*, special attorneys), for the defendant.

Before LAWRENCE and RAO, Judges; FORD, J., not participating

LAWRENCE, Judge: The question for our determination here is whether certain imported merchandise consisting of base castings and upright castings, designed for ultimate use as parts of so-called Mixmasters, was properly classified by the collector of customs as articles or wares not specially provided for, composed wholly or in chief value of zinc, and assessed with duty at the rate of 45 per centum ad valorem, pursuant to paragraph 397 of the Tariff Act of 1930 (19 U. S. C. §1001, par. 397).

Plaintiff makes the following alternative claims:

1. That the merchandise should be classified pursuant to paragraph 353 of said act (19 U. S. C. §1001, par. 353), as modified by the

trade agreement between the United States and the United Kingdom, effective January 1, 1939 (74 Treas. Dec. 253, T. D. 49753), which so far as pertinent reads:

\* \* \* articles having as an essential feature an electrical element or device, such as electric motors, locomotives, portable tools, furnaces, heaters, ovens, refrigerators, and signs \* \* \*; all the foregoing, not specially provided for, finished or unfinished, wholly or in chief value of metal, and not provided for heretofore in any item numbered 353 in this schedule \* \* \*

and dutiable at 25 per centum ad valorem, or—

2. In the same paragraph 353, as modified, which provides for:

Machines having as an essential feature an electrical element or device and which would be dutiable under paragraph 372, Tariff Act of 1930, if of a kind which could be designed to operate without such electrical element or device \* \* \*; all the foregoing, not specially provided for, finished or unfinished, wholly or in chief value of metal, and not provided for heretofore in any item numbered 353 in this schedule \* \* \*

and dutiable at 27½ per centum ad valorem. Said paragraph 353 further provides that—

Parts, not specially provided for, finished or unfinished, wholly or in chief value of metal, of any articles provided for in any item numbered 353 in this schedule, shall be dutiable at the same rate of duty as the articles of which they are parts.

3. Pursuant to the provision in paragraph 372 of said act (19 U. S. C. §1001, par. 372) which reads:

\* \* \* all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: *Provided*, That parts, not specially provided for, wholly or in chief value of metal or porcelain, of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts \* \* \*.

4. In accordance with the terms of paragraph 1558 of said act (19 U. S. C. §1001, par. 1558) which provides, among other things, for—

\* \* \* articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

The record before us includes the testimony of two well-qualified witnesses who appeared on behalf of the plaintiff and three exhibits. Exhibit 1–A, a base casting, and exhibit 1–B, an upright casting, were identified and received in evidence as being from the importation in controversy. Illustrative exhibit A was received in evidence to represent a Mixmaster in which is assembled parts similar to said exhibits 1–A and 1–B in a finished condition.

The first witness who testified on behalf of plaintiff was Paul Jefferies, sales manager of the Schultz Die Casting Co., Wallaceburg, Ontario, manufacturer of the articles in issue. He stated that his company which produces zinc base alloy die castings does all its work according to specifications or blueprints; and that exhibits 1–A and 1–B are covered by Letters Patent, the patent reference appearing on ex-

hibit 1–A but not on exhibit 1–B because the latter is part of the assembly and it is considered that the marking on exhibit 1–A, the base casting, covers the whole mechanism.

Plaintiff's second witness was John Kaser, production manager since 1933 of the Sunbeam Corporation, ultimate consignee of the importation in issue. From 1927 to 1933 he had been employed by the Chicago Flexible Shaft Co., of Chicago, predecessor of the Sunbeam Corp., and was engaged in time study of manufacturing operations. He stated that his employer manufactured various electrical appliances such as the Sunbeam Mixmaster, Shavemaster, Coffeemaster, Ironmaster, Toaster, and so forth; that his duties as production manager are to see that raw materials and finished parts are ordered in the proper quantities at the proper time, and are brought in and processed, where required, through various machining operations, and completed to the point where they can be assembled into finished products; that he supervises the assembly of the finished products, and had supervised the manufacture of Mixmasters. He stated further that he had seen the importation in controversy when it was received at the plant; that exhibits 1–A and 1–B when received were in an unfinished condition; and that various finishing operations, which he detailed, would have to be performed on such articles before assembly with other parts to form completed Mixmasters as represented by illustrative exhibit A.

Mr. Kaser testified further that exhibit 1–A, the base casting, and exhibit 1–B, the upright casting, could not be used for any other purpose than as parts of a Mixmaster and that they are essential parts.

Describing a Mixmaster, this witness stated that the motor is contained in a housing, cylindrical in shape, about 6 inches long and about 3½ inches in diameter; that it is a 110-volt AC-DC motor connected to a cord and plug; that the motor develops 8/100ths of 1 horsepower; the motor housing is attached to one end of the upright, and is surmounted by a Bakelite handle. The housing has a switch and speed regulator on the back of it and has a means for ejecting the beaters after they have been used. There are switch and speed control knobs at the back of the Bakelite handle. Two mixing beaters are fitted into the opposite end from the switch and speed control, at right angles to the motor housing, and get their motion through gears from the motor. There is a revolving disc on which the mixing bowl rests, the disc being about 8 inches in diameter, which fits into one of two holes in the base. There is a mixing bowl of glass about 10 inches in diameter and 5 inches deep which rests on the disc right under the beaters.

Mr. Kaser further testified that to operate the Mixmaster it had to be plugged into a source of electric current, the current switched on, and the speed adjusted in accordance with the kind of ingredients to

be mixed since there are various speeds to take care of different ingredients.

He also stated that illustrative exhibit A utilizes electrical energy through its motor which transforms the electrical energy into motion and operates the beaters; that the electric motor is an essential feature of the Mixmaster and that it could not operate without it; that it is specifically and especially designed to be operated by a motor; and that it is covered by United States Letters Patent and Design Patent.

This witness testified that he had used a Mixmaster several times in his home during the course of the past 15 years and that he had—

* * * seen it used at my home. I have seen it used in our experimental laboratories, and I even seen them used in our plant to mix small amounts of paint.

When asked, on cross-examination, the meaning of the words "portable mixer" appearing in advertisements (not in evidence) of the Mixmaster, he replied: "* * * It means that it can be removed from the upright and used in a pan." As one use of it, the mixer could be held by hand without the upright and base. He later stated that the Mixmaster is generally used with the upright and base, and the article represented by illustrative exhibit A is the Mixmaster that his firm sells, covered by Letters Patent and Design Patent, and if any other upright or base were used it would not be in conformity with the patents.

No witnesses were called to testify on behalf of the Government nor was any other evidence presented.

It is argued by defendant in its brief that, inasmuch as the record indicates that the motorized beater portion of the Mixmaster may be used apart from the articles represented by exhibits 1–A and 1–B which, when finished, will become the base and upright of a complete Mixmaster, the imported articles are not parts of the Mixmaster as the term "parts" has been judicially defined, citing *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851, wherein it was stated:

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article.* [Italics quoted.] *Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T. D. 34249; *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 129, T. D. 41673; *Peter J. Schweitzer, Inc.* v. *United States*, 16 Ct. Cust. Appls. 285, T. D. 42872, and cases cited therein; *United States* v. *John Wanamaker*, 16 Ct. Cust. Appls. 548, T. D. 43266.

The mere fact that two articles are designed and constructed to be used together, does not necessarily make either a part of the other. *Columbia Shipping Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 281, T. D. 39085; *United States* v. *Kalter Mercantile Co. et. al.*, 11 Ct. Cust. Appls. 540, T. D. 39680.

* * * * * * *

It is evident, we think, from the character of the articles and from the testimony in the case, that, when a tripod and a camera are used together, each "performs its separate function without loss of any of its essential characteristics." Whether separate or joined, each is complete in itself, each is a distinct and separate commercial entity. See *United States* v. *Borgfeldt & Co.*, 11 Ct. Cust. Appls. 105, T. D. 38750; *Dow Co.* v. *United States*, 11 Ct. Cust. Appls. 249, T. D. 39077; *Columbia Shipping Co. et al.* v. *United States, supra*; *United States* v. *Kalter Mercantile Co. et al., supra*.

We consider the facts of the *Willoughby* case, *supra*, clearly distinguishable from the case at bar. Whereas in the case relied on by defendant a tripod and a camera were each held to be complete in itself and each a distinct and commercial entity, there is no evidence here to support an analogous finding that the base and upright castings even when finished are complete commercial entities apart from the two beaters attached to the motor. On the contrary, the record discloses that the Mixmaster is generally used with the base and upright; that the article represented by illustrative exhibit A is the Mixmaster that is dealt in in commerce and which is covered by Letters Patent and Design Patent; and that if any other upright or base were used it would not be in conformity with the patents.

From a consideration of all the evidence, we are satisfied that the base and upright castings represented by exhibits 1–A and 1–B are integral, constituent, and component parts of Mixmasters, necessary to their completion, and without which the Mixmasters could not function as such articles. The items of merchandise in controversy, therefore, fall within the definition of the term "parts" contained in the *Willoughby* case, *supra*.

A determination of the proper classification of Mixmasters, of which the present importation forms parts, will be more readily arrived at if the applicability of the provision in paragraph 339 of the Tariff Act of 1930 (19 U. S. C. §1001, par. 339) for household utensils is disposed of. In its brief, the Government contends that the Mixmasters are household utensils within the scope of said paragraph, and that paragraph 339, being a use provision, would prevail over one of general description. However, at the hearing of this case defendant failed to offer any proof in support of its contention.

As has been stated, *supra*, the importation in controversy was classified by the collector as articles or wares not specially provided for, composed wholly or in chief value of zinc, within the purview of paragraph 397. The classification of the collector does not carry with it it any presumption that the articles are parts of household utensils, the only presumption accompanying the classification being that the base and upright castings in themselves are articles or wares not specially provided for, composed of zinc. Therefore, the argument of defendant that Mixmasters are household utensils is an assumption not based on law nor on the facts in the record.

To constitute a household utensil within the scope of paragraph 339, *supra*, the article must be used chiefly or principally in the household. *Frank P. Dow Co., Inc.* v. *United States*, 21 C. C. P. A. (Customs) 282, T. D. 46816.

On the question of use of the Mixmaster, plaintiff's witness Kaser has testified that he has seen it used in his home, in his employer's experimental laboratories, and "in our plant to mix small amounts of paint." Since the test for classification of an article as a household utensil within the purview of said paragraph 339 is predicated on *chief* use in the household, it must follow that in the absence of affirmative proof of such chief use the contention of defendant for the applicability of paragraph 339, *supra*, to the article of which the present importation is a part is without merit.

In connection with the primary claim of plaintiff for classification of the present importation in paragraph 353, as modified, *supra*, as "* * * articles having as an essential feature an electrical element or device, such as electric motors, locomotives * * *," it is interesting to note the case of *United States* v. *Dryden Rubber Co.*, 22 C. C. P. A. (Customs) 51, T. D. 47050. A machine for cutting sponge rubber, equipped with two electric motors, one to furnish the motive power for the machine, the other to supply power for two emery wheels to keep the blade in a continuous sharp condition, was held to come within the corresponding provision of said paragraph 353 prior to its modification. Our appellate court, in the course of its opinion, stated—

An examination of the language of the third division of this paragraph discloses that the articles therein *eo nomine* specified are of various types; they have, however, one characteristic in common, an essential electrical feature. A fan, a washing machine, and a sign seem to have little resemblance, but their analogy rests in the fact that electricity is the essential feature which causes them to function and perform their work. The language evidently was intended to be read, "articles * * * such as electric motors, fans", etc., thus giving these named articles as examples of such as are intended to be covered by the paragraph.

\*         \*         \*         \*         \*         \*         \*

There are two inquiries, therefore, when the question of the classifiability of an article under this division of the paragraph is under consideration: First, is it essentially an electrical article? The electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended, for, it must be manifest, that if it be not an electrical article, it does not come within the division at all. Second, if it is such an electrical article, is it an article named in the language, or within the class of articles named in this paragraph?

From what has been said, it follows that if the article, when it is imported, is designed and constructed to use electrical power, or other power, interchangeably, then it has not, as an essential feature, an electrical element or device.

On the other hand, if, when the article is imported, it is so constructed as to utilize electrical power solely, and, therefore, is, essentially, an electrical article, and its various parts are imported, are intended to be used, and are used, together, as was the case with the imported merchandise, then no reason can be seen why

it should not be considered, for dutiable purposes, within the scope of the third division of this paragraph, for in such case, we think the article should be held to be included within the class of articles named in the paragraph.

Of like import, is the case of *Ralph C. Coxhead Corp.* v. *United States*, 22 C. C. P. A. (Customs) 96, T. D. 47080, wherein the appellate court was of opinion that certain calculating machines, if essentially electrically operated, would come within the scope of the provision of said paragraph 353.

We consider the rule of the *Dryden* case, *supra*, to apply with particular aptness to the facts here before us. The record is clear that the sole use for the base and upright castings, represented by exhibits 1–A and 1–B, is as parts of Mixmasters which are patented, designed, and sold as complete entities; also that the Mixmaster, having been specifically and especially designed to be operated by an electric motor and incapable of operation without it, is essentially an electrical article, and is, therefore, "included within the class of articles named in the paragraph."

Various cases cited by defendant in its brief, not here referred to, have been examined and are not considered to be in conflict with the conclusion arrived at herein.

In view of the foregoing considerations, the importation is excluded from the secondary claim of plaintiff for classification in paragraph 353, *supra*, as modified, for the simple reason that the machine of which the articles are parts is not "of a kind which could be designed to operate without such electrical element or device," it appearing affirmatively that Mixmasters, of which the imported base castings and upright castings constitute parts, would function only by means of the electrical element or device.

Furthermore, inasmuch as we have determined that the articles in controversy are parts of articles which are classifiable, as primarily contended by plaintiff, in paragraph 353, *supra*, as modified, the claim for classification in paragraph 372 cannot be sustained due to the fact that the provision first relied upon is the more specific. See *Ralph C. Coxhead Corp.* v. *United States*, *supra*.

The final alternative claim of plaintiff for classification in said paragraph 1558 is without merit for the reason that that paragraph is limited in its application to articles which are not specially provided for.

On the record before us, we hold that the base castings and upright castings which were classified by the collector of customs as articles or wares not specially provided for, composed wholly or in chief value of zinc, and assessed with duty at the rate of 45 per centum ad valorem pursuant to paragraph 397, *supra*, are properly dutiable as parts of Mixmasters, articles having as an essential feature an electrical element or device, at the rate of 25 per centum ad valorem as provided

in paragraph 353, *supra*, as modified. That claim of plaintiff is therefore sustained. All other claims are overruled.

Judgment will issue accordingly.