**JAMES G. WILEY CO. a/c J. R. Bateman**

v.

**UNITED STATES.**

**C.D. 3738; Protest No. 66/80049–86998.**

United States Customs Court,
Second Division.
March 13, 1969.

Stein & Shostak, Los Angeles, Cal. (S. Richard Shostak, Los Angeles, Cal., of counsel) for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Brian S. Goldstein, New York City, trial attorney), for defendant.

Before RAO, Chief Judge, and FORD, and NEWMAN, Judges.

NEWMAN, Judge:

Presented for our determination is the proper tariff classification of merchandise described on the special customs invoice as "Racealigners."

The collector classified the merchandise under paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108, as articles of base metal, not specially provided for, and accordingly assessed duty at the rate of 19 per centum ad valorem. Without conceding that the classification is incorrect, the Government alternatively claims that the merchandise is classifiable as "mathematical instruments" under paragraph 360 of the act, as modified by T.D. 55816, and therefore dutiable at the rate of 22 per centum ad valorem.

Plaintiff claims that the merchandise is properly dutiable at the rate of 9 per

centum ad valorem under the provision in paragraph 372 of the act, as modified by T.D. 55816, for machines, not specially provided for.

### The Pertinent Statutes

*Classified under:*

Paragraph 397, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \* \* \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\* \* \* \* \* \* \* \*

Not wholly or in chief value of tin or tin plate:

\* \* \* \* \* \* \* \*

Other \* \* \* ................... 19% ad val.

*Defendant's alternative contention:*

The merchandise at issue is properly classifiable under paragraph 360, *supra*:

Scientific and laboratory instruments, apparatus, utensils, and appliances (including surveying and mathematical instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, nor specially provided for:

\* \* \* \* \* \* \* \*

Other (except \* \* \*) ............ 22% ad val.

*Claimed under:*

Paragraph 372, *supra*:

Machines, finished or unfinished, not specially provided for:

\* \* \* \* \* \* \* \*

Other \* \* \* ................... 9% ad val.

The issues are: (1) whether the merchandise is a "machine," as claimed by plaintiff; and (2) whether the merchandise is a "mathematical instrument," as alternatively claimed by defendant.

The following facts are established by the record:

Racealigners are utilized by automobile mechanics for checking the misalignment of a vehicle's front wheels. Plaintiff's only witness, John Roy Bateman, testified without contradiction that he was the ultimate consignee and the exclusive distributor of Racealigners in California, Oregon, and Nevada; that the Racealigner is the only wheel alignment device which is attached to the automobile's spindle,[1] and in effect takes the place of

---

1. The front wheels and their bearings rotate on the spindle.

the front wheels which are removed, while aligning the front end of the automobile. It further appears that the Racealigner is designed to take alignment readings from the machined surfaces of the spindle, and permits the making of necessary adjustments with the wheels removed from the automobile.

Plaintiff's Exhibits 3 and 4 are photographs taken at the trial during a demonstration by Mr. Bateman of the use of a Racealigner on a Chevrolet automobile; Exhibits 1 and 5, comprising Bateman's advertising or sales promotion literature, contain pictures depicting the entire Racealigner and its component parts, which are:

2 "A" frames

2 Turn plates

1 Radius gauge

1 Turn plate handle

1 Adjustment gauge

2 Small compact collets

2 Large compact collets

2 Small standard collets

2 Medium standard collets

2 Large standard collets

2 Spacer rings

The two "A" frames are in the form of legs which attach to the spindles and rest on the turn plates; the turn plates utilize roller bearings so that the Racealigner can move without friction; the radius gauge extends from the outer part of each of the "A" frames and passes through them by means of a spring-loaded cable, giving the toe-in and toe-out readings in degrees and inches; the turn plate handle fits into a hole in the turn plate and affords leverage, or a magnification of power, in turning the front wheels, the worm gear of the automobile, and placing in motion the entire steering mechanism.

The adjustment gauge, represented in part by Exhibit 2, is attached to the "A" frames and gives the readings for caster (the forward or backward tilt of the spindle) and camber (the inward or outward tilt of the wheel). It has moving parts, consisting of a small outer knob and a larger inner knob that turn (either clockwise or counterclockwise) against themselves on a bearing, and an internal shaft, which is offset so that it may control the movement (up or down) of an air bubble level on top of the gauge. Turning the outer knob rotates the offset shaft, thereby causing the air bubble level device to move up or down, depending upon whether the knob revolves clockwise or counterclockwise. When the air bubble has been centered, the outer knob may be locked in place with a thumb screw. The inner knob has the caster and camber dials, and it rotates, depending upon where the outer knob is moved to center the air bubble. Additionally, the adjustment gauge utilizes a spring to hold the air bubble-level tight against the cam of the wheel.

Caster may be measured by moving the turn plate and "A" frame twenty degrees to the front and then twenty degrees to the rear, and utilizing the level and the caster dial of the adjustment gauge for a reading. No adjustments are made, however, until camber is measured by turning the "A" frame to zero and utilizing the level and camber dial of the gauge for a reading. As soon as caster and camber are read on one side of the vehicle, they may be read on the other side, since each side is independent of the other.

After caster and camber on both sides are read, the specifications set forth in the automobile owner's manual are compared with the readings obtained by use of the Racealigner. Adjustment of the caster or camber is then manually accomplished by the mechanic with shims (pieces of steel with a hole in them), or in some cars, with cams (offset washers). Another reading is then made to recheck the caster and camber by the same methods initially used. If caster and camber are found to be correct, toe-in is then read on the radius gauge and adjusted manually.

The items described as collets are used to replace the front wheel bearings for

purposes of checking alignment, and enable the mechanic to obtain a reading from the machined surfaces of the spindle; the items described as spacer rings are used on certain models of automobiles, which have exceptionally long spindles to hold the legs of the "A" frame out.

Based upon the foregoing facts, we shall initially examine plaintiff's claim that the Racealigners are "machines" within the purview of paragraph 372.

■ In United States v. IDL Mfg. & Sales Corp., 48 CCPA 17, C.A.D. 756 (1960), the appellate court reviewed a number of prior decisions involving the issue of whether various devices were "machines" for tariff purposes. The court concluded (*id.* at 23):

> * * * While many items have been held to be, or not to be "machines," there is no "judicial determination" of what a machine is. It remains simply a question of common meaning and each case must be decided on the basis of its own facts, technical and legislative.

The present issue of whether the "Racealigner" is a "machine" must, as in *IDL*, be resolved on the basis of the common meaning of the term "machines," as applied to the technical facts of record.

■ Taking these criteria in inverse order and with respect to the facts, we find that the Racealigner is designed and constructed solely to measure the misalignment in the front wheels of an automobile. Cf. Peet & Powers, Inc. v. United States, 9 Cust.Ct. 185, C.D. 689 (1942), involving so-called Lister alignment indicators used in measuring any misalignment in the bearings and crankshafts of Diesel engines, which were held dutiable as machines, not specially provided for under paragraph 372.

In order to perform its function, the Racealigner utilizes the leveraged force applied by the mechanic to the turn plate handle by transmitting motion through the turn plate, "A" frame, spindle, and through the entire steering system of the vehicle, which turns its front wheels.

Defendant argues that "the claimed utilization of force or leverage does not constitute the Racealigner at bar a 'machine' within the purview of paragraph 372, *supra.*" However, whether the leverage feature *alone* would constitute the Racealigner a "machine" we need not decide in this case, since additionally there are mechanical features present in the adjustment gauge, which satisfy us that the Racealigner, considered as a whole, is unquestionably a machine. The adjustment gauge feature could not be disregarded unless it was merely incidental to the main purpose of the Racealigner. See Thorens, Inc. v. United States, 10 Cust.Ct. 96, C.D. 730 (1943), aff'd 31 CCPA 125, C.A.D. 261 (1943). Since, however, the Racealigner could not perform its intended function without the adjustment gauge, such gauge is clearly not an incidental feature.

The adjustment gauge not only records both caster and camber, but through a rotating knob, offset shaft, and spring, rotary motion (clockwise or counterclockwise) is changed to an up or down motion of the air bubble level device on top of the gauge.

In Nord Light, Inc. v. United States, 49 CCPA 12, C.A.D. 786 (1961), our appellate court in holding light fixture pulleys to be "machines" within the common meaning of that term, stated (*id.* at 15):

> A common meaning of the word "machine" found in the dictionaries which we referred to in the *IDL* case, supra, is a device which may be either simple or complex, whose function is to increase the intensity of an applied force, or to change its direction, or to change one form of motion or energy into another form. Cf. The Columbia Encyclopedia, 2d Ed.

■ We find that the Racealigners fall within the foregoing concept of a "machine." Additionally, we have noted that in *IDL,* the appellate court, in classifying hand-operated paper punches as "machines," considered that "the merchandise goes by the name of paper

punching machines." Similarly, in the present case, Mr. Bateman testified that when he sold the imported articles, they were called "Racealigner alignment machine[s] or equipment" (R. 33).[2]

In Trans Atlantic Co. v. United States, 54 CCPA 75, C.A.D. 909 (1967), our appellate court, in holding that certain keyless door locks (lock sets) were not classifiable as "machines" under paragraph 372, pointed out *inter alia* that "[t]hey * * * do not *make* or *act on* something outside themselves." [Emphasis copied.]

Plaintiff distinguishes *Trans Atlantic* on the basis that, unlike the lock sets, the Racealigners act on something outside themselves, viz., the entire steering system of the vehicle, in performing their functions (brief, page 10). Defendant, on the other hand, points out that the Racealigner does not act on the vehicle to perform the necessary *corrections* (brief, page 20). However, it is sufficient that the Racealigner "acts" on the vehicle as a substitute for its front wheels (R. 26) and in actuating the steering system in the process of checking wheel alignment, since that is its intended function. *Trans Atlantic* is, therefore, distinguishable.

We conclude that plaintiff's contention that the Racealigners are "machines" is well taken.

We now proceed to consider the issue raised by defendant of whether the Racealigners are "mathematical instruments" within the purview of paragraph 360. We deem it appropriate to first interject a brief comment concerning the burden of proof with respect to that issue.

Defendant asserts (brief, page 20) that assuming the Racealigner is within the common meaning of the term "machine," "it was incumbent upon plaintiff, in order to establish its claim, to prove that the merchandise was *not specially provided* for in the Tariff Act."

[Emphasis copied.] A review of the many cases involving competition between paragraphs 397 and 372 discloses that such contention is novel, to say the least.

■■ All facts essential to the collector's classification are presumed to have been established. The merchandise was classified as a metal article, *not specially provided for,* and is claimed to be more specifically provided for as a machine. The sole issue at the trial was whether the merchandise was in fact and in law a "machine," as claimed. There was no burden upon plaintiff to prove that the merchandise was "not specially provided for" under paragraph 360, since that was presumed from the collector's classification under paragraph 397. Therefore, the burden clearly rested upon defendant to prove the applicability of paragraph 360, if it desired to make such counterclaim. Cf. The J. D. Richardson Company v. United States, 25 Cust.Ct. 97, C.D. 1271 (1950).

■ Defendant presented no evidence supporting its alternative claim, but relied instead upon the testimony, on cross-examination, of plaintiff's witness Bateman that the Racealigner measures angles of the automobile's wheels. Based on that testimony, we are urged by defendant to find that "the imported Racealigners operate mechanically to record, with mathematical precision, the angle of inclination of the front wheels of a motor vehicle, a result which would otherwise require a careful mathematical calculation, or recourse to certain devices other than Racealigners, equipped to measure angles." (Brief, page 22.) The quotation is couched in appropriate language to bring the facts of this case within those found by the court in Engis Equipment Co., Inc. v. United States, 16 Cust.Ct. 86, 90, C.D. 990 (1946), upon which defendant heavily relies, to support its alternative claim. However, we find the facts in *Engis* readily distinguishable from those in this case.

2. The witness explained that "Racealigner" is the trade name under which the merchandise was sold (R. 34).

In *Engis*, so-called clinometers were held properly dutiable under the provision for mathematical instruments in paragraph 360 of the Tariff Act of 1930. There, the court found from the testimony of plaintiff's witness that certain parts of the clinometers were made with precision in order that the device might operate properly; that the clinometer measured degrees and minutes of angles, which were shown on the clinometer; that it would be possible to measure angles without the clinometer, and there are various devices that measure angles; and that it could be done by mathematical calculation or computation, which was obviated when the clinometer was employed to give a correct reading.

The foregoing findings are not analogous to the facts of record in this case. Readings for caster and camber are made on the adjustment gauge (R. 13). However, there is no proof that the numbered calibrations on Exhibit 2 have any relation to degrees or minutes of angles. In point of fact, there is no evidence to indicate what the numbers on the caster and camber dials of the adjustment gauge represent. Further, there is no evidence that the standards set forth in automobile manuals for wheel alignment are stated in terms of degrees and minutes of angles, nor that a mechanic, in order to adjust the caster and camber of the front wheels, must make any determination of the degrees or minutes of angles. It does appear, however, that the mechanic simply compares the caster and camber readings with the "specifications" in motor manuals, and then makes the necessary adjustments in order to conform to the manual (R. 21).

To the extent that the purpose of the Racealigner is to enable the mechanic to compare a vehicle's wheel alignment with the standard recommended in the owner's automobile manual, the Racealigner is analogous to the pitch-measuring machine which was involved in National Carloading Corp. v. United States, 5 Cust. Ct. 33, C.D. 364 (1940). That machine measured or compared the distance between teeth on gears during the process of manufacture, giving a reading on a dial gauge, which indicated how close the gear being worked was to the master or standard. The pitch-measuring machine was classified by the collector under paragraph 397 of the Tariff Act of 1930, as a manufacture of metal not specially provided for, and was held to be properly dutiable as a machine not specially provided for, under paragraph 372 of the act, as claimed. In *National Carloading Corp.*, this court rejected plaintiff's alternative claim that the machine was also a mathematical instrument within the meaning of paragraph 360 of the act, citing Niles Bement Pond Co. v. United States, 52 Treas.Dec. 762, Abstract 4728 (1927), holding that certain teeth-measuring devices were properly dutiable as machines under paragraph 372.

Hence, it seems reasonable to conclude that if a machine which measures and compares the size or pitch of gear teeth against standard specifications is not a "mathematical instrument," then a Racealigner which measures and compares caster and camber with standard specifications, is likewise not a mathematical instrument.

Additionally, there is no evidence that the front wheel alignment of a vehicle can be checked by mathematical calculations or computations, which is obviated when the Racealigner is employed. In our view, the fact that the radius gauge provides a means for measuring, in degrees and inches, toe-in and toe-out does not constitute the Racealigner, as a whole, a "mathematical instrument". Rather, such fact tends to establish that the Racealigner is a machine which incorporates, as a part thereof, a mathematical instrument.

Based upon the facts of record, and from an examination of the exhibits, we find and hold that the Racealigners in issue are "machines, not specially provided for," and should have been classified by the collector within the provisions of paragraph 372, as modified. Plaintiff's claim is therefore sustained, and judgment will issue accordingly.