(C.D. 4022)

THE DOW CHEMICAL COMPANY v. UNITED STATES

## United States Customs Court, Second Division

(Decided May 14, 1970)

*H. H. Hillyer III; Barnes, Richardson & Colburn (E. Thomas Honey* of counsel) associate counsel; for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Mollie Strum,* trial attorney), for the defendant.

### Before RAO, FORD, and NEWMAN, Judges

NEWMAN, Judge: These three consolidated protests involve the classification of certain articles imported for assembly into so-called mercury cells. The merchandise was assessed with duty at the rate of 19 per centum ad valorem under the provision in paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108, for manufactures of metal, not specially provided for.

Plaintiff claims that the merchandise is properly dutiable at the rate of 13¾ per centum ad valorem under the provision for parts of articles having as an essential feature an electrical element or device in paragraph 353, as modified by T.D. 52739.[1]

### THE STATUTES INVOLVED

Tariff Act of 1930:

Classified under:

Paragraph 397, as modified by T.D. 54108:

> Articles or wares not specially provided for, whether partly or wholly manufactured:
>
> \* \* \* \* \* \* \*
>
> Composed wholly or in chief value of iron, steel \* \* \*:
>
> \* \* \* \* \* \* \*
>
> Not wholly or in chief value of tin or tin plate:
>
> \* \* \* \* \* \* \*
>
> Other, composed wholly or in chief value of iron, steel \* \* \*_____ 19% ad val.

Claimed under:

Paragraph 353, as modified by T.D. 52739:

> Articles having as an essential feature an electrical element or device \* \* \*:

\* \* \* \* \* \* \*

[1] Plaintiff abandoned its claim respecting the merchandise shown on entries 10136 and 8861, covered by protest 66/24996, as a "palonnier," and item 1 13 on entry 10842 covered by protest 65/24997 (R. 60–61, 65–66, 69; brief, page 21).

| | |
|---|---|
| Other * * * _____ | 13¾% ad val. |
| Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part * * * _____ | The same rate of duty as the articles of which they are parts. |

## QUESTIONS PRESENTED

1. Are mercury cells "articles having as an essential feature an electrical element or device"?

2. Are the imported articles "parts" of mercury cells?

The court finds in the affirmative as to both of the above questions, and sustains plaintiff's claim under paragraph 353, as modified.

## THE RECORD

The sole witness at the trial was called by plaintiff: Peyton Charles Robert, Jr., a long-time employee of Dow Chemical Company and production supervisor acting as plant superintendent at plaintiff's chlor-alkali plant in Plaquemine, Louisiana. Mr. Robert was in charge of the operation and maintenance of the plant, and supervised the work of some 50 plant personnel, including several engineers and laboratory technicians.

The record establishes the following facts:

Plaintiff ordered the imported articles from Solvay & Cie, a Belgium manufacturer, for the purpose of erecting 50 identical mercury cells at a plant in Plaquemine, Louisiana, where chlorine, caustic and hydrogen would be produced. Prior to importation, Robert had visited Holland to observe the operation and construction of similar mercury cells. After importation, he was responsible for identifying, storing and cataloging the articles, and then with a contractor installing them into assembled cells ready for production.

Briefly, the mercury cells were designed to conduct an electric current through a sodium chloride solution for the production of chlorine, caustic and hydrogen. Each cell is approximately 75 to 80 feet long, 6 feet high, and 5½ feet wide, and consists of two parts: the top portion or electrolyzer; and the lower part, which is the denuder or decomposer. Plaintiff erected a building approximately 240 feet long by 110 feet wide to house the 50 mercury cells. The cells were laid side by side, 25 on one floor and 25 immediately below them, and were connected electrically.

The mercury cells function by electrolysis in the following manner: the electrolyzer has suspended within it graphite electrodes through which the current is conducted. Liquid mercury is pumped over a steel

base plate and a sodium chloride solution is introduced and flows around the graphite electrodes. The electric current passes through a salt solution to the mercury and from the mercury to the steel base plate, where it is picked up by copper connectors which take it to the next cell. As the current passes through the solution, it separates the sodium and chlorine ions of the salt. The sodium ion goes to the mercury (cathode) and is dissolved in the mercury. The chlorine ion goes to the graphite electrode, where it gives up its extra electron and becomes chlorine gas which is then removed from the cell. Thereupon, the mercury containing the sodium (called amalgam) passes from the electrolyzer to the denuder or decomposer, where water is introduced. The reaction that takes place there results in the formation of hydrogen and caustic (sodium hydroxide). The hydrogen is removed as gas and the caustic as a fluid. The mercury continues on to a pump and is recirculated into the electrolyzer. Plaintiff's illustrative exhibit 1 is a drawing which depicts in simplified form the operation of the mercury cell.

The mercury cells assembled from the imported components must be operated by electric power, and the production yield is directly proportional to the amount of current that is passed through the cell.

The merchandise under protest includes various rubber-lined steel pipes, steel-jacketed pipes, elbow pipes, flanges, pipe plugs, caps, couplings, bolts, screws, studs, collars and threaded rods.[2] These articles were imported together with a number of other components, comprising in all between 1200 to 1400 differently numbered pieces. Plaintiff had drawings of each individual piece, which was specifically designed for Solvay's mercury cells. Spare and replacement parts were also purchased from Solvay and were ordered by piece number. Exact replacements for the pieces were not available in the United States.

All of the involved articles were essential to the operation of the mercury cells. So far as Robert knew, the merchandise had no use other than in mercury cells due to the specific sizes and configurations of the pieces.[3]

---

[2] A complete listing of the involved articles is shown in the addendum to this opinion. Plaintiff's counsel elicited extensive testimony from Mr. Robert concerning the physical features and specific functions of each component, but we do not consider it necessary to detail such testimony herein.

[3] Robert testified on cross-examination that rubber-lined steel pipe was commonly used in the chemical industry, but he was not asked whether the particular pipe imported was so used (R. 108). Additionally, Robert stated on cross-examination that he had seen collars of the type imported used to hold pipe elsewhere than in his plant, but he was not asked what such pipes were used for (R. 105). We have noted that plaintiff had mercury cells which it had produced itself, or which were produced for it in the United States (R. 15).

## I.

### Mercury Cells Are Within the Purview of Paragraph 353

In order to establish its claim under paragraph 353, plaintiff had the burden of showing that mercury cells are articles having as an essential feature an electrical element or device. As to what constitutes such articles, plaintiff has made reference to *United States* v. *Dryden Rubber Co.*, 22 CCPA 51, T.D. 47050 (1934), where the court stated (id. at page 54):

> * * * [I]f, when the article is imported, it is so constructed as to utilize electrical power solely, and, therefore, is, essentially, an electrical article, and its various parts are imported, are intended to be used, and are used, together, as was the case with the imported merchandise, then no reason can be seen why it should not be considered, for dutiable purposes, within the scope of the third division of this paragraph, for in such case, we think the article should be held to be included within the class of articles named in the paragraph.

The mercury cells which utilized the imported components clearly meet the requirements of paragraph 353, as enunciated in *Dryden*, *supra*. The process of production is by electrolysis and the production yield is directly proportional to the amount of current that is passed through the cell. Indeed, the mercury cell is inoperable without electricity.

In *Procter & Gamble Mfg. Co.* v. *United States*, 4 Cust. Ct. 44, C.D. 281 (1940), this court considered the classification of an electrolyzer battery used for the generation of hydrogen and oxygen gas. It appears that the entire unit was approximately 20 feet long and 8 feet high, and the operation of the device was based upon the principles of electrolysis, or the passage of an electric current through an electrolyte. The battery could not be operated except by the continuous application of electricity, and the result accomplished was in the nature of a chemical reaction similar to that which occurs in an ordinary electric battery. Classification by the collector under paragraph 353 as an article having as an essential feature an electrical element or device was affirmed by the court.

The mercury cells also operate on the principles of electrolysis and are continuously operated by electric power. They are to that extent analogous to the electrolyzer battery in *Proctor & Gamble*, *supra*, and similarly the mercury cells herein are within the purview of paragraph 353.

## II.

### The Imported Articles Are Parts of Mercury Cells

To establish that the components in issue are parts of mercury cells, plaintiff had the burden of proving that such components were

dedicated to use exclusively in mercury cells and served a necessary or useful purpose in the functioning of that article. *Gallagher & Ascher Company* v. *United States*, 52 CCPA 11, C.A.D. 849 (1964); *Gallagher & Ascher Company* v. *United States*, 62 Cust. Ct. 128, C.D. 3695, 295 F. Supp. 316 (1969); *Close and Stewart* v. *United States*, 58 Cust. Ct. 350, C.D. 2985, 268 F. Supp. 466 (1967) We think plaintiff has satisfactorily met that burden of proof. The evidence establishes, without contradiction, that the components covered by these protests are essential to the operation of the Solvay mercury cells, and that they were designed and constructed specifically for assembly into those cells. In point of fact, plaintiff had a drawing of each individual part for the mercury cell. We think that it may be reasonably inferred that the components were "tailor-made" for Solvay's mercury cells, and had no other practical use. Plaintiff's witness testified that he knew of no other use for the components.

The testimony presented by plaintiff was sufficient to shift to the Government the burden of going forward with rebuttal evidence. If the imported components were in fact used for purposes other than mercury cells, it was the duty of the Government to introduce evidence to that effect. The presumption of correctness attaching to the classification is no substitute for rebuttal testimony. *Border Brokerage Co. et al.* v. *United States*, 48 Cust. Ct. 41, C.D. 2311 (1962), *aff'd* 50 CCPA 15, C.A.D 811 (1963) Accordingly, we hold that plaintiff has made out a *prima facie* case that the components are parts of articles having as an essential feature an electrical element or device.

In its brief, defendant emphasizes that the collector assessed some of the mercury cell components at rates of duty lower than plaintiff's claim at the rate of 13¾% under paragraph 353. For example, some of the items were assessed with duty at 10½% under paragraph 328 (iron or steel pipes or tubes), and some at 12½% under paragraph 1537(b) (manufactures in chief value of india rubber, n.s.p.f.). Plaintiff did not protest those lower assessments, but merely the ones which were at the higher rate of 19% under paragraph 397. The Government urges that plaintiff has been inconsistent, since it did not claim that all of the imported components were parts or an entirety.

This contention is totally lacking in merit. First, an entireties claim would have been improper inasmuch as the mercury cell components were imported in several shipments. *Trans-World Shipping Service, Inc., et al.* v. *United States*, 58 Cust. Ct. 120, C.D. 2900 (1967). Second, a "parts" claim respecting any components assessed at less than 13¾ per centum ad valorem would also have been improper, inasmuch as an importer may not protest an assessment of duty as being too low. Plaintiff, therefore, acted quite correctly in protesting

only those assessments which were at a higher rate than that claimed. *George S. Fletcher* v. *United States*, 25 CCPA 195, T.D. 49294 (1937) ; *Carson M. Simon & Co.* v. *United States*, 55 Cust. Ct. 103, C.D. 2558 (1965) ; *Donald Peters* v. *United States*, 41 Cust. Ct. 195, 199–200, C.D. 2042 (1958) ; *W. A. Force & Co., Ltd.* v. *United States*, 24 Cust. Ct. 140, C.D. 1222 (1950).

Defendant also argues that the items under protest have not been satisfactorily identified in the testimony or exhibit 1. A similar argument was made and upheld in *Foster Wheeler Corp.* v. *United States*, 61 Cust. Ct. 166, 177, C.D. 3556, 290 F. Supp. 375 (1968), wherein certain articles classified under paragraph 397 were claimed by plaintiff to be classifiable as "parts." However, unlike the situation in *Foster Wheeler Corp.* plaintiff's witness in the present case gave detailed testimony concerning each of the components under protest, and so far as was practicable such components were identified on exhibit 1. Each of the components covered by Robert's testimony are identified and listed in plaintiff's brief. In sum, there is nothing to support defendant's assertion that plaintiff is asking the court to hold that hundreds of unexplained items should be classified as "parts" under paragraph 353.

Finally, defendant argues that if its classification under paragraph 397 is erroneous, the presumption of correctness attaching thereto is destroyed, and plaintiff was required to affirmatively prove that the merchandise is in chief value of metal. Plaintiff offered no such proof.

In support of its contention, defendant relies upon *New York Merchandise Co., Inc.* v. *United States*, 62 Cust. Ct. 283, C.D. 3746, 305 F. Supp. 25 (1969), appeal pending. In that case, so-called poodle dog radios were classified as toy figures of animate objects under item 737.30 of the Tariff Schedules of the United States, and were asserted by the Government to be alternatively classifiable under item 737.90 as toys. Plaintiff claimed that the merchandise was properly dutiable under item 685.22 as radios, or in the alternative, under item 688.40 as electrical articles not specially provided for.

In *New York Merchandise*, the court held that the articles were "more than" toy figures of animate objects, and the presumption of correctness afforded the Government's classification was overcome. The court further ruled that no presumption of correctness attached to the classification which the Government alternatively claimed, and that the Government had the burden of proof respecting that claim.

*New York Merchandise* presents a somewhat different factual and legal situation than that before us, and does not support defendant's contention herein. In *New York Merchandise*, both the Government's classification and alternative claim were controverted by plaintiff;

while here the collector's determination that the merchandise is in chief value of metal was uncontroverted and remains presumptively correct. Consequently, the present issue was limited to whether the merchandise was more specifically provided for under paragraph 353 than 397. Cf. *James G. Wiley Co., a/c J. R. Bateman* v. *United States*, 62 Cust. 257. C.D. 3738, 296 F. Supp. 955 (1969) : *Biological Raw Products Co.* v. *United States*, 25 Cust. Ct. 1, 2–3, C.D. 1253 (1950).

Furthermore, the classification by the collector under paragraph 397 "is tantamount to an admission on the part of defendant" that the merchandise is in chief value of metal. Cf. *Zenith Novelty Co. et al.* v. *United States*, 49 Cust. Ct. 215, 216, Abstract 67011 (1962).[4] Such admission was not overcome or destroyed by any proof adduced at the trial. Clearly, plaintiff was not required to offer evidence respecting a matter admitted by the Government's classification, and not shown, nor even claimed by defendant, to be erroneous. The plain fact is that the Government adhered to the correctness of its classification through the trial and in its brief. Thus, we conclude that plaintiff was not required to prove affirmatively that the merchandise is in chief value of metal, and that defendant's contention to the contrary is untenable.

The protests are sustained, and judgment will be entered accordingly.

## Addendum

### Protest 65/24996

### Entry 512 of July 17, 1961

| Item No. | Description of Item |
| --- | --- |
| 1 22 | rubber lined steel pipe |
| 1 21 | rubber lined steel pipe |
| 1 205 | rubber lined steel pipe |
| 1 383 | rubber lined steel pipe |
| 1 246 | rubber lined steel pipe |
| 1 247 | rubber lined steel pipe |
| 1 395 | rubber lined steel pipe |
| 1 245 | rubber lined steel pipe |
| 1 215 | rubber lined steel pipe |
| 1 221 | rubber lined steel pipe |
| 1 365 | rubber lined steel pipe |
| 1 211 | rubber lined steel pipe |

---

[4] Moreover, at the trial, counsel for defendant stated : "I do not believe that the plaintiff disputes *the fact that they* [articles under protest] *were in chief value of metal* * * *." Plaintiff's counsel made it clear that he was not contesting that fact, and was relying upon the presumption inherent in the classification (R. 6).

| Item No. | Description of Item |
| --- | --- |
| l 225 | rubber lined steel pipe |
| l 710 | steel stud |
| l 711 | steel stud |
| sp 170 | steel pipe collars |
| sp 188 | steel pipe collars |
| sp 274 | steel pipe collars |
| sp 323 | steel pipe collars |
| sp 99 | steel pipe collars |
| sp 124 | steel pipe collars |
| sp 131 | steel pipe collars |
| sp 277 | steel pipe collars |
| sp 213 | steel pipe collars |
| sp 220 | steel pipe collars |
| sp 1 | threaded rods |
| sp 2 | threaded rods |
| c 7 | steel coupling |
| c 190 | steel stud |

Entry 57 of June 5, 1961

| Item No. | Description of Item |
| --- | --- |
| a 13 | steel stud |
| a 100 | steel screw |
| bc 1 | steel flange |
| bc 3 | steel flange |
| bc 5 | steel flange |
| bc 7 | steel flange |
| br 090 | steel flange |
| br 160 | steel flange |
| br 6 | steel flange |
| br 8 | steel flange |
| br 10 | steel flange |
| br 14 | steel flange |

Entry 11827 of June 7, 1961

| Item No. | Description of Item |
|---|---|
| L 39 | rubber lined steel pipe |
| L 385 | rubber lined steel pipe |
| L 375 | rubber lined steel pipe |
| L 361 | rubber lined steel pipe |
| L 201 | rubber lined steel pipe |
| L 71 | rubber lined steel pipe |
| L 72 | rubber lined steel pipe |
| L 73 | rubber lined steel pipe |
| L 74 | rubber lined steel pipe |
| L 76 | rubber lined steel pipe |
| L 77 | rubber lined steel pipe |
| L 770 | rubber lined steel pipe |
| L 70 | rubber lined steel pipe |
| L 88 | rubber lined steel pipe |
| L 880 | rubber lined steel pipe |
| L 89 | rubber lined steel pipe |
| L 75 | rubber lined steel pipe |

Entry 10136 of April 18, 1961

| Item No. | Description of Item |
|---|---|
| ensembles | denuder section |

Pa 1—pa 2—pa 3

Entry 11254 of May 22, 1961

| Item No. | Description of Item |
|---|---|
| l 20 | rubber lined steel pipe |
| l 36 | rubber lined steel pipe |
| l 355 | rubber lined steel pipe |
| l 39 | rubber lined steel pipe |
| l 244 | rubber lined steel pipe |
| l 35 | rubber lined steel pipe |
| ba 313 | rubber lined steel coupling |
| ba 280 | rubber lined steel coupling |
| ba 264 | rubber lined steel coupling |
| ba 210 | rubber lined steel coupling |
| ba 097 | rubber lined steel coupling |
| ba 114 | rubber lined steel coupling |
| ba 130 | rubber lined steel coupling |
| ba 160 | rubber lined steel coupling |
| ba 190 | rubber lined steel coupling |

## Entry 8861 of March 13, 1961

| Item No. | | Description of Item |
|---|---|---|
| pl | 4 | steel reducer |
| d | 10 | rubber lined steel pipe |
| l | 1 | elbow pipe |
| d | 7 | steel pipe flange |
| d | 1 | rubber lined steel pipe |
| c | 64 | steel flange |
| d | 8 | steel flange |
| d | 13 | steel flange |
| d | 16 | steel flange |
| l | 14 | steel flange |
| e | 2 | steel flange |
| e | 3 | steel flange |
| pc | 10 | steel pipe plug |
| pc | 12 | steel pipe plug |
| c | 6 | steel pipe |
| pc | 11 | steel pipe plug |
| c | 620 | steel cap |
| c | 610 | steel cap |

## Protest 65/24997

## Entry 10842 of May 9, 1961

| Item No. | | Description of Item |
|---|---|---|
| c | 155 | steel stud bolt |
| c | 90 | steel screws |
| c | 12 | steel flange |
| e | 8 | steel flange |
| e | 10 | steel flange |
| e | 9 | steel flange |
| bp | 5 | steel flange |
| bp | 7 | steel flange |
| bt | 175 | rubber lined steel flange |
| bp | 11 | steel flange |
| bc | 6 | steel stud |
| bc | 8 | steel stud |
| bp | 9 | steel flange |
| bp | 3 | steel flange |
| bp | 1 | steel flange |
| bc | 4 | steel stud |

Protest 65/25001

Entry 4498 of November 4, 1960

| Item No. | | Description of Item |
|---|---|---|
| pr | 1 | steel jacketed pipe |
| pr | 2 | steel jacketed pipe |
| pr | 3 | steel elbow |
| pr | 4 | steel adapter elbow |
| pr | 10 | steel pipe plug |

(C.D. 4023)

STONEWALL TRADING CO. *v.* UNITED STATES

